UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW ORTONY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 12 C 5475 |
| v. | ) | |
| | ) | Judge George M. Marovich |
| NORTHWESTERN UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Andrew Ortony ("Prof. Ortony") filed a two-count complaint against

Northwestern University.  In his complaint, Prof. Ortony asserts claims for age discrimination in

violation of the Age Discrimination in Employment Act ("ADEA") and for breach of contract.

Defendant moves to dismiss plaintiff's claims.  For the reasons set forth below, the Court grants

defendant's motion.

## I.    Background

For purposes of this motion to dismiss, the Court takes as true the allegations in Prof.

Ortony's complaint.

From 1989 until earlier this year, Prof. Ortony was a tenured Professor of Psychology,

Education and Social Policy, and Computer Science at defendant Northwestern University.

According to the Northwestern University Faculty Handbook, "[t]enure signifies appointment for

an indefinite period."  Prof. Ortony alleges that, as a tenured professor, he could be discharged

from employment only for cause.

In the spring of 2007, Prof. Ortony requested permission for an academic leave of

absence at a foreign university.  Prof. Ortony met with Professor Penelope Peterson ("Prof.

Peterson"), the dean of Northwestern University's School of Education and Social Policy, to discuss his request.

Before requesting a leave, Prof. Ortony had given no thought to his retirement. After the meeting with Prof. Peterson, Prof. Peterson sent Prof. Ortony a letter. The letter stated, in relevant part:

June 19, 2007

Professor Andrew Ortony
School of Education and Social Policy
Northwestern University
Annenberg Hall
Evanston, IL 60208

Dear Andrew:

I am writing to confirm the proposal we began discussing last month and finalized in subsequent conversations during late May and early June.

At your request, I will accept your resignation from the Northwestern University faculty effective with your retirement on August 31, 2012. In recognition of your many years of service to the School of Education and Social Policy (SESP), I will recommend your appointment as an unsalaried Professor Emeritus effective immediately thereafter.

Between now and your retirement on August 31, 2012, the following terms will apply:

During the Fall of academic year 2007-08, you will teach your regular course(s) and be fully active, in-service, and in residence.

You will begin a leave of absence in Winter quarter 2007-08 through Fall quarter 2008-09. This will constitute a paid leave of absence at your full salary. The School will pay your summer salary as usual during the summer of 2008. Per our agreement, during this time, you will continue to direct the Master of Arts (MA) program in Learning Sciences (LS). I will, however, appoint another faculty member to co-direct the program during this period. We expect you to return to campus two or three times to attend to program matters and be accessible via email and/or for the occasional phone call during your leave to advise me, program staff, and your co-director with regard to MA LS issues.

Effective with your return in Winter quarter 2008-09, and through 2010-11, your appointment and all associated responsibilities will remain as they are at present. You will fulfill your responsibilities for your full teaching load. During this period, you will also continue to discharge such faculty responsibilities as advising, attendance at faculty meetings, committee service, etc. I will also ask that you resume independently directing our MA program in Learning Sciences. That appointment will be ongoing for as long as we mutually agree on that assignment.

During academic year 2011-12, you will receive a paid leave of absence at your full salary. As usual, the salary will be distributed in twelve monthly installments. During this leave you will remain eligible for University benefits, including University contributions to health insurance plans at the full-time, active level. The University will also continue to make retirement contributions. The leave of absence means you will not be required to be in residence or to teach during academic year 2011-12. In addition, the School will continue to guarantee–or pay–your summer salary through the summer of 2012. As is always the case, for this final summer or any time between now and then, should you have external funding available to support your summer salary, we would certainly appreciate the opportunity to supplant internal funding and reallocate those funds to other worthwhile purposes in the School.

If you wish to retire from, or for any other reasons terminate your appointment with, the University prior to August 31, 2012, you of course may do so. Having agreed to provide a paid leave of absence during calendar year 2008, however, we do expect that you will return to campus and to active service on our faculty at the end of that leave, and that you will continue for a minimum of three academic quarters before initiating any changes to this plan that would result in your earlier departure. Allowing for that, I will support a request to retire earlier than August 31, 2012, and still provide a paid leave of absence during the final year preceding your retirement. At such a time as you might wish to initiate such a revision to this agreement, you will let me know and we will confirm those terms.
I trust you will find these terms consistent with our conversation. I encourage you to review any benefits questions you have with . . .

You may indicate your acceptance of this plan by signing one copy of this letter and returning it to my office.

In closing, though it is obviously premature–and I will look forward to expressing these sentiments again in the future–I can't let pass this opportunity to thank you for the years of research, teaching and service that you have given to our School and to Northwestern. I will look forward to much more good work together–and for some time still–before the time comes to formally celebrate your transition to our community.

The letter was signed by Prof. Peterson. Below her signature was a line labeled "Accepted by Andrew Ortony" with a signature line above. Prof. Ortony signed the letter and dated it June 25, 2007.

On July 30, 2007, Prof. Ortony had lunch with Lawrence Dumas, who was, at the time, the Provost of Northwestern University. Prof. Ortony asked the Provost to clarify his retirement situation. The Provost told Prof. Ortony that he had the option to retire but that he was not required to retire. Prof. Ortony put retirement "out of mind."

The subject of Prof. Ortony's retirement came up again in February 2011. On or about February 17, 2011, Prof. Peterson informed Prof. Ortony that his teaching duties would be reassigned due to his retirement at the end of the 2011-12 academic year.

Prof. Ortony alleges that, on November 11, 2011, he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Defendant submitted a copy of the charge of discrimination, which reflects that Prof. Ortony signed the charge on November 29, 2011 and that the EEOC stamped it received on December 2, 2011. The EEOC issued a notice of right to sue on May 24, 2012. On July 11, 2012, Prof. Ortony filed his complaint. In Count I of his complaint, Prof. Ortony alleges that Northwestern University violated the Age Discrimination in Employment Act "by raising, in the context of his request for a leave, the issue of his retirement." Prof. Ortony believes that he "was treated differently than other, younger professors who requested leaves and for whom the issue of retirement was never raised and who were not required to retire." In Count II, Prof. Ortony alleges that Northwestern University breached the tenure agreement, as outlined in the Northwestern University Faculty Handbook.

II.     **Standard on a motion to dismiss**

-4-

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombley*, 127 S.Ct. at 1964-1965. A complaint must include enough factual allegations to "raise a right to relief above a speculative level." *Twombley*, 127 S.Ct. at 1965.

In considering a motion to dismiss, a court may not consider matters outside the pleadings without converting the motion to a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). The pleadings include documents attached to the complaint. *See* Fed.R.Civ.P. 10(c). The pleadings also include documents referred to in the complaint that are central to the plaintiff's claim. *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 778 (7th Cir. 2007) (document attached to motion to dismiss is considered part of the pleadings where the document is referred to in the complaint and is central to the plaintiff's claim). Here, Prof. Ortony's complaint refers to three documents that are central to her claim. In ¶ 13, Prof. Ortony refers to a letter sent to Prof. Ortony by Prof. Peterson. In ¶ 27, Prof. Ortony refers to the Northwestern University Faculty Handbook. In ¶ 3, Prof. Ortony mentions the

charge of discrimination that he filed with the EEOC. Defendant has submitted these three documents, and the Court will consider them as part of the pleadings on this motion to dismiss.[1]

III.    Discussion

A.    Plaintiff's ADEA claim

Defendant moves to dismiss plaintiff's ADEA claim on the basis of the 300-day statute of limitations for filing a charge of discrimination.

The ADEA sets out administrative requirements that must be met before one may file a discrimination complaint in federal court. The Supreme Court has explained that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). "[P]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Threadgill v. Moore U.S.A.*, 269 F.3d 848, 851 (7th Cir. 2001) (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).

Among other procedural requirements, a plaintiff wishing to pursue his ADEA claim in federal court generally must file a charge of discrimination with the EEOC or the Illinois Department of Human Rights within 300 days after the allegedly unlawful employment practice. *See* 29 U.S.C. § 626(d)(1)(B). This (like every) statute of limitations is an affirmative defense,

_____

[1]Defendant also attached a document entitled the *School of Education and Social Policy Policy and Procedures Handbook*. Defendant argues that this document, while not mentioned in plaintiff's complaint, may be considered part of the pleadings because it is incorporated by reference in the Northwestern University Faculty Handbook. The Court need not consider this argument, because the document is not relevant to the motion to dismiss.

-6-

and the plaintiff need not plead around it. *United States Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). Still, a plaintiff "may plead himself out of court by alleging (and thus admitting) the ingredients of a defense." *Id.*

Defendant first argues that Prof. Ortony's ADEA claim accrued in June 2007, when he was first notified that he was expected to retire on August 31, 2012. This Court agrees. Prof. Ortony's claim accrued when he was first told in 2007 that he was expected to retire on August 31, 2012. *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) (The "alleged discrimination occurred–and the filing limitations period therefore commenced–at the time the tenure decision was made and communicated to [plaintiff]. That is so even though the *effects* of the denial of tenure–the eventual loss of a teaching position–did not occur until later." ); *see also Carter v. Chicago State Univ.*, Case NO. 07 C 4930, 2011 WL 3796886 at *7 (N.D. Ill. Aug. 24, 2011) (plaintiff's claim accrued when he was first told about his summer schedule, not when he was later provided a final contract). Prof. Ortony implicitly concedes this "discovery" rule by arguing that his claim accrued in February 2011 (when Northwestern University again brought up the subject of his retirement) rather than on August 31, 2012. The claim, though, accrued when Prof. Ortony was *first* notified, not when he was reminded. It is clear from the pleadings that Prof. Ortony knew no later than June 25, 2007 (the day he signed Prof. Peterson's letter) that Northwestern expected him to retire on August 31, 2012. Prof. Ortony's claim accrued no later than June 25, 2007.

Prof. Ortony's better argument is that the statute of limitations is tolled due to equitable tolling or equitable estoppel. In his complaint, Prof. Ortony alleges that, on July 30, 2007, he had lunch with the Provost, who told him that retirement was an option, not a requirement. Of

course, Prof. Ortony need not plead around the statute of limitations affirmative defense, so he need not include in his complaint all of the details of his equitable tolling/estoppel argument. Likewise, the Court need not decide whether equitable tolling and equitable estoppel actually apply in this case.

What the Court needs to decide is whether, even assuming equitable tolling and equitable estoppel apply, Prof. Ortony has admitted the elements of Northwestern's statute of limitations affirmative defense. The Court concludes that he has. "'Equitable estoppel suspends the running of the statute of limitations during any period in which the defendant took active steps to prevent the plaintiff from suing.'" *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 689 (7th Cir. 2004) (quoting *Singletary v. Cont'l Ill. Nat. Bank & Trust Co. of Chi.*, 9 F.3d 1236, 1241 (7th Cir. 1993)). Equitable tolling is less generous; it merely "permits the deferral of suit until the tolling event ceases and requires diligent action thereafter." *Prime Eagle Group Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 379 (7th Cir. 2010). The Court has already concluded Prof. Ortony's claim accrued June 25, 2007. Prof. Ortony has also alleged that on July 30, 2007, the Provost told him that retirement was merely an option, not a requirement. It was not until February 17, 2011, according to Prof. Ortony's allegations, that he was again told that he was expected to retire on August 31, 2012. If Prof. Ortony could establish equitable estoppel such that the statute of limitations would be suspended from July 30, 2007 through February 17, 2011, then the deadline for filing his charge of discrimination would be November 9, 2011. If Prof. Ortony could establish equitable tolling, the deadline would be even earlier. It is clear from the pleadings that Prof. Ortony did not file his charge by November 9,

2011. Thus, it is clear from the pleadings that, even if either equitable tolling or equitable estoppel applies, Prof. Ortony's claim is time-barred.

Prof. Ortony has alleged and thus admitted the elements of defendant's statute of limitations affirmative defense. Accordingly, Count I is dismissed with prejudice.

**B.      Plaintiff's state law claim for breach of contract**

The Court has supplemental jurisdiction over plaintiff's remaining claim for breach of contract. Because the Court has disposed of the only claim over which it had subject-matter jurisdiction, the Court exercises its discretion to dismiss the remaining state claim without prejudice. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits."). Count II is dismissed without prejudice, and plaintiff is free to file that claim in state court.

**IV.      Conclusion**

For the reasons set forth above, the Court grants defendant Northwestern University's motion to dismiss. Count I is dismissed with prejudice. Count II is dismissed without prejudice. Case dismissed.

ENTER:

George M. Marovich
United States District Judge

DATED:  November 27, 2012